**ASSOCIATED TELEPHONE AND TELE-GRAPH COMPANY, Appellant and Cross Appellee,**

v.

**UNITED STATES of America, Appellee and Cross Appellant.**

No. 333, Docket 27396.

United States Court of Appeals Second Circuit.

Argued April 27, 1962.

Decided July 30, 1962.

Winthrop, Stimson, Putnam & Roberts, New York City, by John J. Boland, New York City, a member of the firm (Theodore F. Brophy, Robert Adelson, Robert

P. Adelman, New York City, of counsel), for appellant.

Robert M. Morgenthau, U. S. Atty., S. D. N. Y. (Robert Arum, Asst. U. S. Atty., Harold C. Wilkenfeld, Atty., Dept. of Justice, of counsel), for appellee.

Before WATERMAN, SMITH and MARSHALL, Circuit Judges.

WATERMAN, Circuit Judge.

This case presents two distinct questions of federal income taxation under the Internal Revenue Code of 1954, one involving the treatment of capital losses on a consolidated return, the other involving the foreign tax credit provisions. The taxpayer brought this action in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1346, seeking a refund of a portion of the federal income taxes it had paid for the taxable year 1954. The district court in an opinion reported at 199 F.Supp. 452 (S.D.N.Y.1961) granted summary judgment for the Government on the consolidated return issue and summary judgment for the taxpayer on the foreign tax credit issue. Each party appealed from the judgment against it. On the consolidated return issue we affirm on the able opinion of Judge Levet below, 199 F.Supp. at 469–477.

Thus we turn to a consideration of the foreign tax credit issue raised by the Government's appeal. The facts relevant to this issue were stipulated by both parties. They are as follows:

The plaintiff taxpayer Associated Telephone and Telegraph Co. (Associated) is a Delaware corporation with its principal place of business in New York City. Associated has a wholly-owned subsidiary, Automatic Electric Co. (Automatic), also a Delaware corporation. Automatic formerly had two wholly-owned subsidiaries, Pan-American Telephone & Telegraph Company (Panco), a Delaware corporation, and Filcrest Co., Ltd. (Filcrest), which was organized and existed under the laws of Canada. All of these corpora-

tions were within the affiliated group of the plaintiff Associated.

In 1954 the directors and shareholder of Filcrest adopted resolutions providing for the liquidation of that corporation. On December 15, 1954, the Filcrest liquidator, appointed by the Supreme Court of Ontario, Canada, distributed assets having an aggregate fair market value of $9,574,386.10 to Filcrest's sole shareholder Automatic.[1] Out of this sum the liquidator paid $283,396.13 directly to the Director of Internal Revenue, Taxation Division, of the Dominion of Canada, to satisfy the 5% dividend withholding tax imposed by the Canadian Income Tax Act and in accord with Article XI.2 of the Income Tax Convention between the United States and Canada.

For the taxable year 1954 the plaintiff filed a consolidated United States income tax return, pursuant to the Internal Revenue Code of 1954 §§ 1501 and 6012 (a), 26 U.S.C.A. §§ 1501, 6012(a), for itself and its subsidiary corporations, Automatic, Filcrest and Panco. The return disclosed consolidated taxable income in the amount of $14,969,808.42 and consolidated income tax liability in the amount of $5,189,174.48, which latter amount the plaintiff paid to the Delaware District Director of Internal Revenue.

The gain to Automatic on the distribution of Filcrest's assets, $5,069,868.67, was reported on the 1954 consolidated return as a long-term capital gain.

At the time of its liquidation distribution Filcrest had, for federal income tax purposes, accumulated earnings and profits after February 28, 1913, in the amount of $6,322,008.64. Upon these accumulated earnings and profits Filcrest had paid to the Dominion of Canada and the provinces of Quebec and Ontario income and excess profits taxes in the aggregate amount of $2,387,564.86. Treating Filcrest's liquidating distribution to Automatic as income received from a foreign source, the plaintiff on its 1954 United States consolidated return, to the

1. All figures are expressed in American dollars.

extent of Filcrest's accumulated earnings and profits, treated the distribution as a "dividend" within the meaning of Int. Rev.Code of 1954 § 902(a), 26 U.S.C.A. § 902(a). Accordingly, the taxpayer claimed a foreign tax credit, pursuant to Int.Rev.Code of 1954 §§ 901, 902, and 904, 26 U.S.C.A. §§ 901, 902, 904, for the Canadian taxes of $2,387,564.86 paid by Filcrest on its earnings and profits. This credit was claimed in addition to the credit claimed under § 901 for the amount of the 5% Canadian dividend withholding tax paid there on the liquidating distribution.

The Commissioner of Internal Revenue disallowed the $2,387,564.86 foreign tax credit claimed by Associated for the Canadian taxes paid by Filcrest on its earnings and profits.[2] The taxpayer paid the ensuing deficiency and filed a claim for its refund. After the Commissioner disallowed the claim, Associated brought this action in the district court, where the judge below rejected the position taken by the Commissioner, and,

accordingly, granted summary judgment for the taxpayer.

The sections of the 1954 Code which are primarily relevant here are §§ 901, 902(a) and 904(a). In brief, § 901 of the Internal Revenue Code of 1954 authorizes a credit against one's federal income tax liability for like taxes paid to foreign countries.[3] Section 902(a) makes a foreign tax credit available to a domestic corporation in any taxable year in which the domestic corporation receives "dividends" from a foreign corporation for a proportionate share of the income taxes paid or deemed to have been paid by the foreign corporation to a foreign country on accumulated earnings and profits.[4] Section 904(a) limits the total credit to which the taxpayer is entitled for taxes paid to a particular foreign country to that proportion of the taxpayer's United States income tax which its taxable income from that foreign country bears to its entire taxable income under the Internal Revenue Code for the same taxable year.[5]

2. The Commissioner allowed the $283,396.-13 credit claimed by the taxpayer for the 5% Canadian dividend withholding tax paid on the liquidating distribution. It is not involved in the present litigation except as it may throw light on the foreign tax credit claimed by Associated but disallowed by the Commissioner.

3. "§ 901. Taxes of foreign countries and of possessions of United States
"(a) *Allowance of credit.*—If the taxpayer chooses to have the benefits of this subpart, the tax imposed by this chapter shall, subject to the applicable limitation of section 904, be credited with the amounts provided in the applicable paragraph of subsection (b) plus, in the case of a corporation, the taxes deemed to have been paid under section 902. * *
"(b) *Amount allowed.*—Subject to the limitation of section 904, the following amounts shall be allowed as the credit under subsection (a):
"(1) *Citizens and domestic corporations.*—In the case of a citizen of the United States and of a domestic corporation, the amount of any income, war profits, and excess profits taxes paid or accrued during the taxable year to any foreign country or to any possession of the United States * * *."

4. "§ 902. Credit for corporate stockholder in foreign corporation
"(a) *Treatment of taxes paid by foreign corporation.*—For purposes of this subpart, a domestic corporation which owns at least 10 percent of the voting stock of a foreign corporation from which it receives dividends in any taxable year shall be deemed to have paid the same proportion of any income, war profits, or excess profits taxes paid or deemed to be paid by such foreign corporation to any foreign country or to any possession of the United States, on or with respect to the accumulated profits of such foreign corporation from which such dividends were paid, which the amount of such dividends bears to the amount of such accumulated profits."

5. "§ 904. Limitation on credit
"(a) *Limitation.*—The amount of the credit in respect of the tax paid or accrued to any country shall not exceed the same proportion of the tax against which such credit is taken which the taxpayer's taxable income from sources within such country (but not in excess of the taxpayer's entire taxable income) bears to his entire taxable income for the same taxable year."

The question we are called upon to decide is whether the term "dividends" in § 902(a) includes liquidating distributions. If the term does not include liquidating distributions, the Commissioner was correct in disallowing the credit the taxpayer claimed it was permitted to take upon the liquidation of Filcrest.

Both the taxpayer and the Government seek to substantiate their respective positions by extensive analysis of successive revenue acts. A review of the history of the provisions relevant here is therefore appropriate.

The first act which allowed a credit to a domestic corporation for taxes paid by a foreign corporation in which the domestic corporation was a shareholder was the Revenue Act of 1918. As in all subsequent acts and codes, the credit was allowed at the time the domestic corporation received a "dividend" from the foreign corporation.[6] This type of foreign tax credit has often been referred to as the "deemed to have been paid" credit. In that revenue act, the two

prior acts, and all subsequent acts and codes, the general definition of a dividend, without certain qualifications not relevant here, was "any distribution of property made by a corporation to its shareholders out of its earnings and profits accumulated after February 28, 1913."[7] In the 1918 Act liquidation distributions were treated as payments in exchange for stock.[8]

In the Revenue Act of 1921, Congress expanded the foreign tax credit provision so as to allow to a domestic corporation holding stock in a foreign corporation a credit for foreign taxes paid by the foreign corporation on its accumulated profits in years prior to the year in which the pertinent dividend was paid or was payable to the domestic corporation.[9] See American Chicle Co. v. United States, 316 U.S. 450, 62 S.Ct. 1144, 86 L. Ed. 1591 (1942). Furthermore, in the 1921 Act the treatment of liquidating distributions as payments in exchange for corporate stock was removed; and liquidating distributions were to be treated

6. Revenue Act of 1918, Sec. 240. "(c) For the purposes of section 238 a domestic corporation which owns a majority of the voting stock of a foreign corporation shall be deemed to have paid the same proportion of any income, war-profits and excess-profits taxes paid (but not including taxes accrued) by such foreign corporation during the taxable year to any foreign country or to any possession of the United States upon income derived from sources without the United States, which the amount of any dividends (not deductible under section 234) received by such domestic corporation from such foreign corporation during the taxable year bears to the total taxable income of such foreign corporation upon or with respect to which such taxes were paid: Provided, That in no such case shall the amount of the credit for such taxes exceed the amount of such dividends (not deductible under section 234) received by such domestic corporation during the taxable year."
Until the Revenue Act of 1951 the domestic corporation was required to own a majority of the voting stock of the foreign corporation to be entitled to a foreign tax credit under this provision. The Revenue Act of 1951, § 322(a), re-

duced the ownership requirement to ten percent of the foreign corporation's voting stock.

7. Revenue Act of 1916, § 2(a); Revenue Act of 1917, § 1211; Revenue Act of 1918, § 201(a); Revenue Act of 1921, § 201(a); Revenue Act of 1924, § 201 (a); Revenue Act of 1926, § 201(a); Revenue Act of 1928, § 115(a); Int.Rev. Code of 1939, § 115(a), 26 U.S.C.A. § 115(a); Int.Rev.Code of 1954, § 316(a), 26 U.S.C.A. § 316(a).

8. Revenue Act of 1918, Sec. 201(c).

9. Revenue Act of 1921, Sec. 238. "(e) For the purposes of this section a domestic corporation which owns a majority of the voting stock of a foreign corporation from which it receives dividends (not deductible under section 234) in any taxable year shall be deemed to have paid the same proportion of any income, war-profits, or excess-profits taxes paid by such foreign corporation to any foreign country or to any possession of the United States upon or with respect to the accumulated profits of such foreign corporation from which such dividends were paid, which the amount of such dividends bears to the amount of such accumulated profits * * *."

like ordinary dividends. Treas.Reg. 62, art. 1545.

The 1924 Act did not change the foreign tax credit provisions involved here. However, it did reinstate exchange treatment for liquidating distributions.[10] The 1924 Act also began capital gain treatment for sales and exchanges of capital assets held by individual taxpayers, but not by corporations.[11]

In the Revenue Act of 1942, Congress for the first time extended capital gain treatment to corporations.[12]

The provisions outlined above became parts of the Internal Revenue Code of 1954 without significant change. See S. Rep.No.1622, 83d Cong., 2d Sess. 419 (1954); H.R.Rep.No.2543, 83d Cong., 2d Sess. 68 (1954). The foreign tax credit allowed to domestic corporations for foreign taxes paid by a foreign corporation or paid by the subsidiary of a foreign corporation is § 902(a) of the 1954 Code. The general dividend provision is § 316 (a). The exchange treatment for corporate liquidations is found in § 331(a), 26 U.S.C.A. § 331(a).

On the basis of this history the Government argues that the original predecessor to the present § 902(a) was the provision above referred to that appears in the Revenue Act of 1918, and that at that time distributions in liquidation were considered by Congress as payments in exchange for corporate stocks, not corporate dividends. Therefore, the Government argues that the 1918 Congress did not intend the term "dividend" in the "deemed to have been paid" foreign tax credit provision to include a distribution in liquidation. To support its position the Government relies upon the Supreme Court's decision in Hellmich v. Hellman, 276 U.S. 233, 48 S.Ct. 244, 72 L.Ed. 544 (1928). That case involved the credit accorded an individual against the normal tax upon his net income for amounts "received as dividends." Reve-

nue Act of 1918, § 216(a). The court held that a distribution in liquidation was not a dividend so as to entitle recipients of such a distribution to the credit provided by § 216(a). Cf. Foster v. United States, 303 U.S. 118, 58 S.Ct. 424, 82 L.Ed. 700 (1938). The Government also relies upon a comment of the House Ways and Means Committee in 1950:

"Even if the liquidation or merger of a foreign subsidiary corporation does not qualify as tax-free, the domestic parent corporation is taxed on its gain only at long-term capital gain rates, including that part of the gain which is attributable to earnings of the foreign subsidiary which have been accumulated free of United States income tax. *This procedure may not always be profitable, however, since a credit for foreign income taxes is not allowed against the capital gain tax.*" (Emphasis added.) H.Rep.No.2319, 81st Cong., 2d Sess. 52 (1950).

The taxpayer, on the other hand, asserts that, because of the substantial change in the foreign tax credit brought about by the 1921 Act, that act, instead of the 1918 one, was the true origin of the present provision. See Hearings on Revenue Revision Before the House Committee on Ways and Means, 81st Cong., 2d Sess. 275 (1950); cf. 5 Mertens, Federal Income Taxation § 33.14 at n. 18 (Zimet & Ness Revision). Inasmuch as the 1921 Act treated distributions in liquidation as dividends, the taxpayer contends that the 1921 Congress intended "dividends" in the "deemed to have been paid" foreign tax credit provision to include a distribution in liquidation. The taxpayer further contends that the Revenue Acts of 1924 and 1942 in reestablishing exchange treatment for liquidation distributions and in extending capital gain treatment first to individuals and then to corporations could in no way

10. Revenue Act of 1924, Sec. 201(c).

11. Revenue Act of 1924, Sec. 208.

12. Int.Rev.Code of 1939, Sec. 117(c) (1), 26 U.S.C.A. § 117(c) (1).

affect the scope of the term "dividend" in the "deemed to have been paid" foreign tax credit provision.

We find neither the Government's nor the taxpayer's argument persuasive. When there is nothing to indicate that any of the draftsmen or legislators responsible for any of the provisions here involved ever considered the problem before us, it is pure fiction to conclude that, because Congress passed certain broad legislation dealing with liquidation distributions and capital gain treatment at various times and did not at other times, Congress must have "intended" certain results under the foreign tax credit provisions. This type of analysis imputes to the legislators an infinity of knowledge and a unity of intention which they obviously did not have. Such an analysis does little to throw light on the purposes behind the "deemed to have been paid" credit provision. The decision in Hellmich v. Hellman, supra, may be a helpful analogy because it involved a credit provision somewhat analogous to the one at issue here, but still it is relevant only as an analogy. If the comment by the House Committee, relied upon by the Government, had been made shortly after the original enactment of the foreign tax credit legislation on which the Committee was commenting, we might place great reliance on that statement. The Committee would then have likely been conversant with the purpose of the provision. See Tri-Lakes S.S. Co. v. Commissioner, 146 F.2d 970 (6 Cir. 1945). But the "deemed to have been paid" foreign tax credit provision had been in the successive revenue acts for over twenty-five years when. this particular comment was made. Accordingly, we are able to express our view of the significance of the 1950 comment by the House Committee by quoting from Judge Learned Hand:

> "Congress may no doubt indicate its understanding as to the scope of its former words, and when this can be treated as a command, it will control, subject to constitutional limits [Merle-Smith v. Commissioner, 42 F.(2d) 837, 842 (C.C.A.2)]; but its interpretation as such is immaterial. It is as likely to be wrong as anyone else, and in the end the courts must decide." Fire Companies Bldg. Corp. v. Commissioner, 54 F.2d 488, 489 (2 Cir. 1931), cert. denied, 286 U.S. 546, 52 S.Ct. 498, 76 L.Ed. 1283 (1932).

See also Penn Mutual Life Ins. Co. v. Lederer, 252 U.S. 523, 538, 40 S.Ct. 397, 64 L.Ed. 698 (1920).

The parties also seek to support their respective positions by discussion of related and analogous provisions of the Internal Revenue Code of 1954. The plaintiff contends that Sections 861 and 862, 26 U.S.C.A. §§ 861, 862 substantiate the proposition that the term "dividends" in Section 902(a) includes liquidating dividends. Section 861 lists certain types of income which are to be treated as income from sources within the United States. Section 862 lists certain types of income that are to be treated as income from sources outside of the United States. Both sections refer to "dividends," § 861(a) (2) and § 862(a) (2); and neither section makes separate reference to liquidation distributions. Since the parties have stipulated that the distribution involved here is foreign source income, Associated maintains the distribution is includable within the category of "dividends" provided by § 862(a) (2), and, if this is so, it must also come within the category of "dividends" in the closely related § 902(a).

As the Government points out, however, the next following section, § 863, makes it abundantly clear that §§ 861 and 862 were not intended to be comprehensive lists of all types of income. See Treas.Reg. § 1.863–1(a). It would be an appropriate interpretation of the statutory scheme to treat liquidating distributions as "other" foreign source income under § 863 instead of within one of the enumerated types of income under § 862. Cf. Helvering v. Suffolk Co., 104 F.2d 505 (4 Cir. 1939).

The taxpayer calls our attention to the Fourth Circuit decision of Hay v. Commissioner, 145 F.2d 1001, 160 A.L.R. 548 (4 Cir. 1944), cert. denied, 324 U.S. 863, 65 S.Ct. 868, 89 L.Ed. 1419 (1945). The taxpayer in that case, the sole shareholder of a California corporation, transferred all of his stock in the corporation to a newly created foreign personal holding company. Then he had the holding company liquidate the California corporation. Besides answering several other tax questions, the Fourth Circuit held that the distribution was income from a source within the United States. The court seemingly rested this part of its decision on the predecessor to § 861(a) (2), for it said that that subsection encompassed liquidation distributions as well as ordinary dividends. The Hay decision was a desirable one, because it prevented a convenient tax avoidance scheme. It is obvious that the court in Hay did not have the present situation in mind. As we mentioned above, perhaps it would have been more suitable to classify distributions in liquidation as "other" income. In any event, we do not accept the implication which the taxpayer here asserts must follow from the Hay decision; namely, that we are required to interpret "dividends" in Section 902(a) as including liquidating distributions.

The taxpayer also finds assistance in § 902(b). That subsection, first enacted in 1942,[13] allows a credit to a domestic corporation for foreign taxes paid by a foreign subsidiary (S–2) of the foreign corporation in which the domestic corporation holds stock directly (S–1). This subsection, like § 902(a), ties its relief to the transmission of "dividends" between corporations. Since a distribution from (S–2) to (S–1) is beyond the reach of the American taxing authorities, the taxpayer maintains that it should be irrelevant under Section 902(b) whether (S–2) distributes assets to (S–1) in the form of an ordinary dividend or as a liquidation distribution. Perhaps this is true, but just because no Congressional tax policy would be frustrated by reading "dividend" in § 902(b) so as to include liquidation distributions, it does not follow that a Congressional policy behind § 902(a) would not be frustrated by interpreting the term "dividend" in this subsection to include liquidating distributions. If symmetry must be preserved throughout § 902, it would seem more appropriate to let the scope of the word in subsection (a) determine the meaning of the same word in subsection (b) instead of attributing a meaning to the word in (b) and then attempting to relate that meaning back to the word in (a).

Associated relies on language in § 583, 26 U.S.C.A. § 583 and also upon the statutory pattern indicated by §§ 852(b) (3) (B) and 854(a), 26 U.S.C.A. §§ 852 (b) (3) (B), 854(a). Section 583 allows a deduction to banking institutions for certain dividends paid by them to the United States or to any of its instrumentalities. The section explicitly excludes from the category of exempt dividends distributions in liquidation. Associated argues that this section demonstrates that Congress knew how to express itself when it desired to separate liquidation distributions from dividends; and, therefore, when there is no explicit differentiation (e. g., § 902(b)), the term "dividend" should be interpreted to include liquidation distributions. The difficulty with this inference is that Congress also knew how to express itself when it specifically wanted liquidation distributions to be treated as dividends. See § 562(b), 26 U.S.C.A. § 562(b), which relates to the "dividends paid" deduction. Turning to §§ 852(b) (3) (B) and 854(a), the former provides capital gain treatment for certain dividends received by shareholders of regulated investment companies; and the latter provides that the recipients of such dividends are not entitled to certain benefits that are granted to shareholders who receive the usual type of dividend. These

13. Int.Rev.Code of 1939, as amended, Sec. 131(f) (2), 26 U.S.C.A. § 131(f) (2).

two sections relate to the treatment of distributions, presumably in the ordinary course of business, which are attributable to capital gains realized by an investment company on the sale of its portfolio securities. Such provisions throw little light on the question whether liquidation distributions, which, in any event, receive capital gain treatment under the broader § 331, are to be treated like ordinary dividends when one seeks to take advantage of the "deemed to have been paid" foreign tax credit.

The Government, on the other hand, calls our attention to § 243(a), 26 U.S. C.A. § 243(a), which allows to corporations a "dividends received" deduction of eighty-five per cent on dividends received from domestic corporations. In Robert Gage Coal Co., 2 T.C. 488 (1943), the Tax Court held that a predecessor to § 243 (a) [14] did not apply to liquidating distributions. See also 7 Mertens, Federal Income Taxation § 38.44 (Zimet & Barton Revision). The Government contends that there is a "close conceptual relationship" between § 243(a) and § 902 (a), and, therefore, the interpretation in the Robert Gage Coal Co. case should carry over to § 902(a). But there is no indication that it was the purpose of Congress in passing § 902(a) to treat the domestic corporate shareholder of a foreign corporation in the same way as the domestic corporate shareholder of a domestic corporation is treated. Therefore, we are not so sure that the Congressional policies underlying § 243 and § 902(a) are as closely related as the Government would have us believe.

The taxpayer retorts with two decisions, Pembroke Realty & Sec. Corp. v. Commissioner, 122 F.2d 252 (2 Cir. 1941), and Piper v. United States, 50 F.Supp. 363 (D.Minn.1943), appeal dismissed, 142 F.2d 465 (8 Cir. 1944), involving the Revenue Act of 1934, § 351, which imposed a surtax on the undistributed adjusted net income of personal holding companies. In determining undistributed adjusted net income "divi-

dends paid during the taxable year" were to be excluded. § 351(b) (2) (C). In Pembroke and Piper the courts applied this provision to liquidation distributions. See also Fisher v. Kavanagh, 100 F.Supp. 248 (E.D.Mich.1951). But other courts have apparently disagreed with this interpretation of "dividends" paid by personal holding companies. Brooklyn Nat'l Corp., 5 T.C. 892 (1945), aff'd, 157 F.2d 450 (2 Cir.), cert. denied, 329 U.S. 733, 67 S.Ct. 96, 91 L.Ed. 634 (1946); St. Louis Co. v. United States, 237 F.2d 151 (3 Cir. 1956), cert. denied, 352 U.S. 1001, 77 S.Ct. 558, 1 L.Ed.2d 546 (1957). Furthermore, the differences in purpose are obvious between the "deemed to have been paid" foreign tax credit provision and the "dividends paid" provision for computing personal holding company undistributed income.

Next, the taxpayer refers us to the Supreme Court decision in Commissioner v. Bedford's Estate, 325 U.S. 283, 65 S. Ct. 1157, 89 L.Ed. 1611 (1945). There the Court held that the boot in a recapitalization was to be treated as a dividend under § 112(c) (2) of the Revenue Act of 1936, and not as a partial liquidation under § 115(i) of that act. The taxpayer maintains that this decision establishes the proposition that the general definition of "dividend" (formerly Revenue Act of 1936 § 115(a), now Int.Rev.Code of 1954 § 316(a)) is the only limitation on the term "dividend" wherever the term is used without further explicit qualification in the Code. The Government answers that the Bedford case should only be interpreted to mean that the terms "dividend" and "partial liquidation" are mutually exclusive. Even if we are not prepared to agree entirely with the Government's interpretation of the Bedford case, it seems clear that Associated seeks to read far too much into the Supreme Court's decision.

Both parties seek support from Int. Rev.Code of 1954, § 331(b), which makes § 301 (relating to effects on shareholders

14. Revenue Act of 1936, Sec. 26.

of distributions of property) inapplicable to liquidation distributions. The Government also relies on § 902(c) and (d). We have considered these sections and find them inconclusive on the point at issue before us.

A consideration of all of the above provisions of present and past revenue laws, and the relevant cases, including Hellmich v. Hellman, supra,[15] leads only to the conclusion that in some contexts the term "dividend" in the Code includes liquidation distributions and in other contexts that term does not include liquidation distributions.

■■■■■ The answer to the question before us is not to be found by relying upon terminology, but in a consideration of the policies behind the foreign tax credit allowance generally, and the policies behind § 902(a) in particular. The basic policy underlying all the foreign tax credit provisions is the elimination of double taxation. Burnet v. Chicago Portrait Co., 285 U.S. 1, 52 S.Ct. 275, 76 L. Ed. 587 (1932); American Chicle Co. v. United States, 316 U.S. 450, 62 S.Ct. 1144, 86 L.Ed. 1591 (1942); W. K. Buckley, Inc. v. Commissioner, 158 F.2d 158

(2 Cir. 1946); Commissioner v. American Metal Co., 221 F.2d 134 (2 Cir.), cert. denied, 350 U.S. 829, 76 S.Ct. 61, 100 L.Ed. 740 (1955); Aluminum Co. of America v. United States, 123 F.2d 615 (3 Cir. 1941). But there is a well-established limitation on this policy. It is *not* the purpose of this foreign tax credit allowance to relieve taxpayers from bearing the full United States tax burden attributable to income arising from sources within this country. See H.Rep.No.350, 67th Cong., 1st Sess. 178 (1921); H. Rep.No.855, 76th Cong., 1st Sess. 5 (1939).[16] Moreover, the purpose of Section 902(a) is to extend the same tax treatment to a domestic corporation with a foreign subsidiary as is accorded a domestic corporation with a foreign branch within the same corporate shell.[17] Our decision should endeavor to effectuate these policies.

If Associated were a unitary American corporation with a foreign branch instead of an American corporate parent with foreign corporate subsidiaries, it would pay taxes to the foreign country where the branch was situated upon income derived from sources within that

15. See also Atlantic City Elec. Co. v. United States, 142 Ct.Cl. 519, 161 F. Supp. 811 cert. denied, 358 U.S. 834, 79 S.Ct. 561, 3 L.Ed.2d 71 (1958); Idaho Power Co. v. United States, 142 Ct.Cl. 534, 161 F.Supp. 807, cert. denied, 358 U.S. 832, 79 S.Ct. 53, 3 L.Ed.2d 70 (1958); Fowler Bros. & Cox, Inc. v. Commissioner, 138 F.2d 774 (6 Cir. 1943).

16. H.Rep. No. 855, 76th Cong., 1st Sess. 5 (1939) states:
The limitations on the allowance of a credit for taxes paid to foreign countries were placed in the law to make it certain that the Federal Government would receive its full tax on the income from the United States sources. It was not intended for the American tax to apply against the income from foreign sources unless the foreign tax rate was less than the tax rate imposed by the United States.

17. Senator Smoot explained the purpose of this provision as follows:
This amendment extends the credit for foreign income and profits taxes paid

to a domestic corporation which owns a majority of the voting stock of a foreign subsidiary, from which subsidiary the domestic corporation receives taxable dividends.
In such a case a foreign subsidiary is much like a foreign branch of an American corporation. If the American corporation owned a foreign branch, it would include the earnings or profits of such branch in its total income, but it would also be entitled to deduct from the tax based upon such income any income or profits taxes paid to foreign countries by the branch in question. Without special legislation, however, no credit can be obtained where the branch is incorporated under foreign laws.
Since the foreign subsidiary may not send back to the American parent company all of its profits or earnings, it follows that the American parent company should not obtain a credit for all the income and profits taxes paid to foreign countries by the European subsidiary. The amendment in question grants only a partial or prorated credit (61 Cong. Rec. 7184 (1921)).

country, and would receive an equivalent credit on its United States income tax in the years when that foreign income was earned and taxed abroad. Accordingly, the tax credit would be offsetting an American tax at the ordinary income rates, not the capital gains rates.[18] Since foreign tax rates on ordinary income are generally higher than our capital gains rate (as in the present case) the allowance of a "deemed to have been paid" foreign tax credit at the time of a liquidating distribution would permit, under the mathematics of the formula in § 904, a domestic corporation with a foreign subsidiary to use its foreign tax credit to offset a portion of the United States tax payable on income earned in this country. Such a result would not only be inconsistent with the treatment accorded domestic corporations that have foreign branches but would also violate the general limitation on the foreign tax credit pointed out in the preceding paragraph.

To allow the credit here would facilitate a convenient scheme for avoiding the United States income tax. A domestic corporation could set up one or more foreign subsidiaries, allow the foreign subsidiary to accumulate the income it earned abroad for several years, and then liquidate the subsidiary at the capital gains rate, claim the foreign tax credit, entirely avoid the United States ordinary income rates on the foreign income, and offset to some degree the United States tax on the corporation's American-earned income. No Congress from 1913 to the present ever "intended" such a result.

The taxpayer complains that this is double taxation. But it was within Associated's power to avoid this consequence. It could have required Filcrest to distribute its income as dividends in the ordinary course of business prior to liquidation. Then the affiliated group would clearly have been entitled to a foreign tax credit under Section 902(a).

The Court of Appeals for the Seventh Circuit in Fowler Hosiery Co. v. Commissioner, 301 F.2d 394 7 Cir. April 13, 1962, and the Court of Claims in Freeport Sulphur Co. v. United States, 143 Ct.Cl. 111, 163 F.Supp. 648, modified on other grounds, 143 Ct.Cl. 111, 172 F.Supp. 462 (1959), have rejected taxpayers' claims to "deemed to have been paid" foreign tax credits for similar reasons.

■■ Associated makes one further point. Under the direct foreign tax credit provided in Sec. 901, a taxpayer may under certain circumstances receive a credit for foreign "ordinary income" taxes which it could apply against the American capital gains tax. See Rev. Rul. 54–15, 1954–1 Cum.Bull. 129; cf. Helvering v. Campbell, 139 F.2d 865, 870 (4 Cir. 1944). The Internal Revenue Code is not a high precision instrument. It lays down rules of general prescription. Circumstances sometimes arise when the statutory scheme fails to operate in accordance with the policies which motivated its creation. That such circumstances occur does not give us an excuse for failing to effectuate the general policies of the relevant Code provisions when it is possible to do so. Section 902(a) is subject to two interpretations. One facilitates tax avoidance. The other accords with the broad policies behind the foreign tax credit provisions. We accept the latter interpretation and hold that the term "dividend" in Section 902(a) does not apply to liquidation distributions. On this issue the judgment of the district court is reversed, and the case is remanded.

Affirmed in part and reversed in part.

---

18. There is no indication that Filcrest's accumulated earnings and profits were ■■■ anything but ordinary income or included sales or exchanges of capital assets.