*Decision will be entered under Rule 155.*

BRUNSWICK CORPORATION AND SUBSIDIARIES, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 37357–87.          Filed January 11, 1993.

*Wayne S. Kaplan* and *Barry Alan Van Dyke,* for petitioner.
*Beth L. Williams, Pamela V. Gibson,* and *William G. Merkle,* for respondent.

OPINION

TANNENWALD, *Judge:* Respondent determined deficiencies in petitioner's Federal income taxes for the taxable years 1980, 1981, and 1982 of $1,098,354, $10,604,917, and $14,531,731, respectively.

The issue for decision is the amount of foreign taxes that petitioner should be deemed to have paid under section 902[1] for purposes of determining the foreign tax credit.

This case was submitted fully stipulated pursuant to Rule 122(a). The stipulation of facts and accompanying exhibits are incorporated herein by reference. We set forth below those facts necessary to an understanding and resolution of the issue before us.

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioner is a Delaware corporation with its principal corporate office in Skokie, Illinois, at the time the petition was filed. Petitioner timely filed consolidated U.S. corporate income tax returns for its 1980, 1981, and 1982 taxable years with the Internal Revenue Service Center, Kansas City, Missouri. For all relevant years, petitioner maintained its books and filed its Federal income tax returns using the accrual method of accounting and on the basis of the calendar year.

For all relevant years, Brunswick International, Ltd. (BIL), a Delaware corporation, was a wholly owned subsidiary of petitioner and joined petitioner in the filing of consolidated U.S. corporate income tax returns. BIL held 499,999 of the 500,000 issued and outstanding shares of Sherwood Medical Industries, Ltd. (SMIL), a United Kingdom corporation, during the taxable years at issue and had a basis in such shares of $1,200,000. SMIL was a first-tier subsidiary of BIL during the entire period beginning with SMIL's incorporation on December 15, 1967, and ending on March 9, 1982. During that period, SMIL distributed no dividends, and its U.S. shareholders did not include any income with respect to SMIL under subpart F of the Internal Revenue Code, sections 951 through 959.

Beginning in 1971, SMIL maintained a French branch operation. During the period from 1971 until 1973, SMIL also maintained a West German branch operation. The French and German branches engaged primarily in sales of products manufactured by SMIL or by Sherwood Medical Industries, Inc., a Delaware corporation affiliated with petitioner.[2]

The earnings and profits (or deficits) of SMIL, computed in accordance with U.S. Federal income tax accounting principles, and the foreign taxes paid or accrued by SMIL in respect of its income, both converted into U.S. dollars, were as follows for each taxable year of its existence prior to March 9, 1982:

| TYE | Earnings and profits | Total foreign taxes | U.K. taxes paid | French taxes paid | German taxes paid |
|---|---|---|---|---|---|
| 12/31/67 | -0- | -0- | -0- | -0- | -0- |
| 12/31/68 | [1]($228,667) | -0- | -0- | -0- | -0- |

---

[2] The record contains no evidence of SMIL's activities in the United Kingdom, but it is not disputed that SMIL paid United Kingdom income taxes.

| TYE | Earnings and profits | Total foreign taxes | U.K. taxes paid | French taxes paid | German taxes paid |
|---|---|---|---|---|---|
| 12/31/69 | (75,567) | -0- | -0- | -0- | -0- |
| 12/31/70 | (74,446) | -0- | -0- | -0- | -0- |
| 12/31/71 | 620,771 | $194,657 | $194,657 | -0- | -0- |
| 12/31/72 | 1,311,618 | 191,399 | 69,271 | $111,030 | $11,098 |
| 11/30/73 | 1,966,794 | 287,547 | -0- | 271,602 | 15,945 |
| 11/30/74 | 806,925 | 76,935 | -0- | 76,935 | -0- |
| 11/30/75 | [2](1,087,643) | 63,796 | -0- | 63,796 | -0- |
| 11/30/76 | (3,154,856) | 26,030 | -0- | 26,030 | -0- |
| 11/30/77 | (306,355) | 9,537 | -0- | 9,537 | -0- |
| 11/30/78 | 621,024 | 13,387 | -0- | 13,387 | -0- |
| 11/30/79 | 1,555,368 | -0- | -0- | -0- | -0- |
| 11/30/80 | 3,165,102 | -0- | -0- | -0- | -0- |
| 11/30/81 | 329,901 | 31,413 | 31,413 | -0- | -0- |
| 11/30/82 | (147,136) | -0- | -0- | -0- | -0- |
| Total | 5,302,833 | 894,701 | 295,341 | 572,317 | 27,043 |

[1] Amounts stated in parentheses reflect deficits in earnings and profits of SMIL for the year indicated. We note that, in 1973, SMIL apparently changed its taxable year from a calendar year to fiscal year ending November 30. The record contains no explanation of this change, but the fact of change appears irrelevant to our analysis.

[2] Even though SMIL incurred losses for 1975, 1976, and 1977, taxes were paid to France in those years due to the profitable operations of that branch during such years.

In March 1982, petitioner and its subsidiary, BIL, transferred to American Home Products Corp. (American) the stock of a number of petitioner's direct and indirect subsidiaries, including SMIL, in exchange for stock of petitioner which was held by American. Petitioner and respondent agree that the exchange of stock of petitioner held by American for stock of SMIL was a taxable disposition on which the amount realized therein by BIL was $7,967,910.

On its consolidated U.S. corporate income tax return for the taxable year ended December 31, 1982, petitioner reported BIL's gain on the disposition of its SMIL stock as capital gain and, consequently, did not claim any foreign tax credits under section 902 as a result of such disposition. However, petitioner and respondent now agree that BIL's gain on the SMIL disposition constituted ordinary dividend income, pursuant to section 1248, to the extent of SMIL's accumulated profits,[3] which were $5,302,833, and that the balance, $1,465,077, constituted a long-term capital gain.

[3] The accumulated profits of a foreign subsidiary are defined as the sum of: (1) The earnings

Petitioner has elected to claim foreign tax credits in respect of all foreign income taxes paid and deemed paid by itself and its consolidated subsidiaries including BIL.

Section 902(a) provides as follows:

SEC. 902. CREDIT FOR CORPORATE STOCKHOLDER IN FOREIGN CORPORATION.

(a) TREATMENT OF TAXES PAID BY FOREIGN CORPORATION.—For purposes of this subpart, a domestic corporation which owns at least 10 percent of the voting stock of a foreign corporation from which it receives dividends in any taxable year shall be deemed to have paid the same proportion of any income, war profits, or excess profits taxes paid or deemed to be paid by such foreign corporation to any foreign country or to any possession of the United States, on or with respect to the accumulated profits of such foreign corporation from which such dividends were paid, which the amount of such dividends (determined without regard to section 78) bears to the amount of such accumulated profits in excess of such income, war profits, and excess profits taxes (other than those deemed paid).

Thus, the foreign tax credit is determined by application of the following formula:

$$\text{Foreign taxes deemed paid} = \text{Foreign income taxes paid} \times \frac{\text{Dividends received by domestic corporation}}{\text{Accumulated profits of foreign corporation less foreign taxes paid}}$$

Section 902(c)(1) provides in part as follows:

The Secretary shall have full power to determine from the accumulated profits of what year or years such dividends were paid, treating dividends paid in the first 60 days of any year as having been paid from the accumulated profits of the preceding year or years (unless to his satisfaction shown otherwise), and in other respects treating dividends as having been paid from the most recently accumulated gains, profits, or earnings.[4]

_____

and profits of the subsidiary and (2) the foreign income taxes imposed on or with respect to the gains, profits, and income to which such earnings and profits were attributable. Sec. 1.902-1(e), Income Tax Regs. Thus, there is a direct relationship between a subsidiary's earnings and profits and its accumulated profits. See *United States v. Goodyear Tire & Rubber Co.*, 493 U.S. 132, 139 (1989); *H.H. Robertson Co. v. Commissioner*, 59 T.C. 53, 78-79 (1972), affd. without published opinion 500 F.2d 53 (3d Cir. 1974); 1 Owens & Ball, Indirect Credit, par. 2/6B2, at 164 (1975). In view of the agreement of the parties as to the amount of the dividend, any difference between earnings and profits and accumulated profits is not relevant to the disposition of the instant case.

[4] For taxable years beginning after Dec. 31, 1986, the foreign tax credit, in respect of dividends paid out of post-1986 earnings of a foreign subsidiary, is determined under an amended

Accordingly, dividends are deemed to be paid out of the most recently accumulated profits of the foreign corporation. If a dividend received by a U.S. corporation exceeds the foreign subsidiary's accumulated profits of the most recent year, any excess is sourced to the accumulated profits of prior years in reverse chronological order.

The parties have locked horns on the question of how the $5,302,833 treated as a dividend should be sourced under section 902(c)(1) in order to calculate the allowable foreign tax credit. Petitioner takes the position that, since such dividend represented all of SMIL's accumulated profits, there is no occasion to source it to particular years with the result that the entire amount of foreign taxes paid by SMIL from its inception in 1967, namely, $894,701, is creditable.

Alternatively, petitioner advances two sourcing formulas, one based on an allocation of SMIL's deficits to the profit years in proportion to such profits, thereby reducing the profits and the creditable taxes for those years, and the other based upon the application of the principles of the net operating carryover provisions of section 172, treating deficits as net operating losses to be carried backward and forward.

Respondent, utilizing the method set forth in Rev. Rul. 74-550, 1974-2 C.B. 209, and Rev. Rul. 87-72, 1987-2 C.B. 170, asserts that the same principle mandated by section 902(c)(1) to source the dividend should be used to determine the creditable foreign taxes paid by SMIL. Thus, respondent treats the profits accumulated in 1972, 1973, and 1974 as having been offset by the deficits in 1968, 1969, 1970, 1975, and 1976 and sources the $5,302,833 dividend to profits accumulated by SMIL during 1978, 1979, 1980, and 1981 reduced by SMIL's loss in 1982. See table *supra* pp. 7-8. On this basis, respondent concludes that the creditable taxes of SMIL are those paid in 1978 and 1981 totaling $44,800. For the reasons hereinafter set forth, we agree with respondent.

Initially, we observe that the precise issue before us is one of first impression. Nevertheless, we are not without guidance from the decided cases in which the courts have struggled to synthesize the application of the statutory provisions in respect of "dividends", "accumulated profits", and "foreign

version of sec. 902, which aggregates foreign taxes and accumulated profits without reference to the particular year in which they were paid or earned. Tax Reform Act of 1986, Pub. L. 99-514, sec. 1202(a), 100 Stat. 2528. See *infra* pp. 13 & 15.

taxes paid on or with respect to such accumulated profits"[5] with the acknowledged legislative purposes of avoiding a double tax burden on U.S. taxpayers and equating the tax position of U.S. corporations owning stock in foreign corporations with those having foreign branches. See, e.g., *United States v. Goodyear Tire & Rubber Co.*, 493 U.S. 132, 139-140 (1989); *American Chicle Co. v. United States*, 316 U.S. 450, 451 (1942); *Burnet v. Chicago Portrait Co.*, 285 U.S. 1, 7 (1932); *Vulcan Materials Co. v. Commissioner*, 96 T.C. 410, 418-419 (1991), affd. per curiam 959 F.2d 973 (11th Cir. 1992). Having stated these purposes, which are not disputed by either party herein, we find it unnecessary to repeat the confirming analysis contained in the legislative history of section 902, set forth in *United States v. Goodyear Tire & Rubber Co.*, *supra* at 139-141; see also *Associated Telephone & Telegraph Co. v. United States*, 306 F.2d 824, 832 (2d Cir. 1962).

As long ago as 1942, the Supreme Court stated that the statute was designed "to permit identification of the accumulated profits of each taxable year out of which the dividends might have been paid and to give credit for a proportion of the subsidiary's taxes attributable to such accumulated profits." See *American Chicle Co. v. United States*, *supra* at 454. The application of this principle was further elaborated upon by this Court in *H.H. Robertson Co. v. Commissioner*, 59 T.C. 53, 79-80 (1972), affd. without published opinion 500 F.2d 1399 (3d Cir. 1974), where we quoted section 902(c)(1) and then stated:

Accordingly, under these provisions a dividend is allocated first to the full extent that it can be absorbed by the "accumulated profits" of the most recent year from which it was paid; the remainder is then allocated to the "accumulated profits" of the next most recent year to the extent that it can be absorbed by such "accumulated profits," and so on down the years. A separate foreign tax credit is then computed for each of the years to which the dividend has been allocated, and the determination for each such year is made only in respect of that portion of the dividend that is allocated to such year. * * * The foreign tax credit under section 902 is then determined for the year in which the dividend was paid by adding together the separate credits thus computed for each of the years from the accumulated profits of which the dividend was paid. * * *

---

[5] These phrases have been described as not being "defined with gemlike clarity". See Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders, par. 17.11, at 17-43 (5th ed. 1987).

See also *Champion International Corp. v. Commissioner,* 81 T.C. 424, 432, 440 (1983); *General Foods Corp. v. Commissioner,* 4 T.C. 209, 215-216 (1944). The principle has recently been recognized in *United States v. Goodyear Tire & Rubber Co., supra* at 137 and n.3, wherein the Supreme Court held that domestic rather than foreign law controlled the determination of accumulated profits. However, petitioner complains bitterly that respondent's calculation, based upon this principle, deprives it of credit for approximately 95 percent of the foreign taxes SMIL paid over the years, a result which it asserts is at war with the legislative purposes and is not required by the language of section 902(c)(1). It argues that the principle, applicable in sourcing a dividend in order to determine from the accumulated profits of what year or years the dividend was paid, should not control the sourcing of a dividend in order to determine which taxes should be considered as having been paid. Thus, petitioner concludes that, at least where the dividend represents the distribution of all the accumulated profits (as is the case herein), sourcing is unnecessary. We find petitioner's position unacceptable as totally inconsistent with the principle established by the above-quoted language from *American Chicle* and *Robertson* (a principle which petitioner accepts); namely, that the statute expressly requires a separate, yearly calculation of accumulated profits so that distributions may be sourced, on a year-by-year basis in reverse chronological order, to a subsidiary's accumulated profits in order to determine the source of a dividend. The hard fact is that, applying this principle, SMIL's profits for 1978 through 1982 were more than sufficient to cover the dividend distributed in 1982.

We think that the same principle should apply in respect of both sourcing determinations, i.e., the accumulated profits from which the dividend was paid and the appropriate year for crediting foreign taxes, in order to avoid adding further complexity to the complex definitional concepts which already permeate the foreign tax credit provisions. Cf. *Champion International Corp. v. Commissioner, supra.* We think this is especially true where less than all accumulated profits are distributed. Indeed, even petitioner recognizes that, in such a situation, its aggregate approach might have to be supplanted with a year-by-year sourcing approach along the lines advocated by respondent herein—a problem which peti-

tioner suggests we resolve by leaving its solution to another day. We are not persuaded by petitioner's convoluted efforts simultaneously to distinguish and draw sustenance from the decided cases to support its position that a different rule should apply where all the accumulated profits are distributed.

Essentially, petitioner seeks to transform the guidelines of avoidance of double taxation and subsidiary-branch equivalence into immutable mandates. This we are not prepared to do. In the first place, petitioner's aggregate approach includes the crediting of foreign taxes which were paid in years in which petitioner sustained losses. In *United States v. Goodyear Tire & Rubber Co.*, 493 U.S. at 143, the Supreme Court specifically stated that where the subsidiary's income is zero "*none* of the tax paid by the subsidiary can be credited to the parent". Petitioner seeks to avoid this principle by arguing that the "on or with respect to the accumulated profits" language of section 902(a) is sufficiently ambiguous to permit the allocation of taxes paid in years for which SMIL had deficits to the years in which SMIL had profits on which it paid taxes "with respect to" accumulated profits. We are not persuaded that we should accept such semantical legerdemain in view of the above-quoted language of the Supreme Court. See also *American Chicle Co. v. United States*, 316 U.S. at 453; *H.H. Robertson Co. v. Commissioner*, 59 T.C. at 70; *General Foods Corp. v. Commissioner, supra.*

Second, petitioner's aggregate approach is nothing more than a device to source the 1982 dividend from SMIL to years in which the foreign taxes were substantially greater in order to be in the position of getting the same credits to which BIL would have been entitled had SMIL paid the dividend in those years. See 1 Owens & Ball, Indirect Credit, par. 2/6C3, at 171 (1975). But the fact of the matter is that the dividends were not paid in those years for reasons best known to BIL. Indeed, the prospect of postponement of dividends in light of the possibility of higher foreign taxes in later years caused the Congress, in 1986, to adopt the pooling method which petitioner advocates herein. See *supra* note 4; H. Rept. 99-426, 1986-3 C.B. (Vol. 2) 1, 356-359. At that time, Congress also was concerned about the impact of respondent's allocation formula embodied in Rev. Rul. 74-550, 1974-2 C.B. 209, and utilized herein. H. Rept. 99-426, *supra,* 1986-3 C.B. (Vol.

2) at 355-356. However, in thus changing the rules of the game, Congress made the pooling provision applicable only prospectively. In this connection, we think it appropriate to note that, in adopting the pooling provision, Congress obviously proceeded on the assumption that respondent's formulation in Rev. Rul. 74-550, *supra,* was consistent with "the ordering principles of present law", H. Rept. 99-426, *supra,* 1986-3 C.B. (Vol. 2) at 357, and indicated that the new provision was a departure from, and not a clarification of, the existing situation. See Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders, par. 17.11, at 17-47 (5th ed. 1987); cf. *Petroleum Corp. of Texas, Inc. v. United States,* 939 F.2d 1165, 1169 (5th Cir. 1991).[6] Although we recognize that the views of a subsequent Congress as to the meaning of a statute are entitled to little weight, we think that the approach of Congress in 1986 is not without significance in view of the language of section 902(c)(1) and the discretion granted to the Secretary of the Treasury therein. Cf. *Bobsee Corp. v. United States,* 411 F.2d 231, 237 n.18 (5th Cir. 1969); *Darby v. Commissioner,* 97 T.C. 51, 59 (1991). See *H.H. Robertson Co. v. Commissioner,* 59 T.C. at 90, and *General Foods Corp. v. Commissioner,* 4 T.C. at 216, where the discretion of the Secretary has specifically been recognized as a factor to be taken into account in sourcing a dividend to accumulated profits, a point of view which we think is not, as petitioner suggests, necessarily limited by the language of section 902(c)(1) to such sourcing for the purpose of determining the amount of a dividend.

Third, it is important to recognize that taxes in respect of which petitioner seeks credit were paid on a total of $5,657,033, representing SMIL's profits in 1971, 1972, 1973, 1974, 1978, and 1981, an amount which exceeds the amount of SMIL's accumulated profits as of 1982 and therefore the amount of the dividend. Concededly, the difference is relatively small ($5,657,033 minus $5,302,833), but it clearly indicates that, under petitioner's aggregate approach, the taxes for which credit is sought were paid on amounts which have not been subject to U.S. tax. This difference would be substantially greater if the $4,720,470 representing SMIL's profits for 1979 and 1980—years in which no foreign taxes

---

[6] See also 1 Owens & Ball, Indirect Credit, par. 2/6C3, at 173, 175 n.262 (1975).

were paid—are added in. Indeed, if SMIL had paid foreign taxes in those years, the amount of the claimed credit, under petitioner's aggregate method, would be increased accordingly although there would be no increase in the amount of the dividend includable in petitioner's income. In our view, where the amount of dividend income is less than the amounts subjected to foreign tax, credit should be available only to the extent that foreign taxes were paid on the lesser amount. See *National Cash Register Co. v. United States,* 400 F.2d 820, 825 (6th Cir. 1968) ("Section 902 allows a credit only for foreign taxes on the portion of the foreign corporation's earnings which are distributed as dividends to a domestic corporation."). To the extent that the aggregate approach produces a credit in excess of that limitation, petitioner is not being subjected to a double tax burden.

Fourth, petitioner's position, that respondent's method penalizes it in that credit would have been available for the taxes SMIL paid in 1971, 1972, 1973, and 1974 if SMIL had been a branch instead of a subsidiary, ignores the fact that SMIL's profits, as a branch, would have been subject to U.S. tax in those years. To be sure, had SMIL been a branch, petitioner would have been entitled to deduct, for U.S. tax purposes, the losses sustained in 1968, 1969, 1970, 1975, and 1976. However, petitioner could have achieved substantial branch equivalent treatment if it had caused SMIL (as it could have through its ownership of BIL) to distribute its profits in the earlier years as dividends, thereby avoiding the loss of the credits which it now seeks to obtain. See *Associated Telephone & Telegraph Co. v. United States,* 306 F.2d at 833. Furthermore, the offsetting of loss years against profit years available where there is a subsidiary rather than a branch operation, as respondent has done herein, reduces the amount that will be characterized as a taxable dividend in the hands of the U.S. corporate taxpayer. Thus, there is at least a rough equivalence to the treatment of branch and subsidiary situations although admittedly this depends upon the timing of the subsidiary's distribution, a condition which is within the subsidiary's and, under most circumstances, the parent's control.

The long and the short of the matter is that we conclude petitioner's method fails to satisfy the requirements of section 902 and the principles enunciated by the decided cases.

Our analysis leading to this conclusion demonstrates that respondent's method is faithful to those requirements. Indeed, respondent's method follows the pattern adopted in *United States v. Goodyear Tire & Rubber Co.,* 493 U.S. at 143, where, in concluding that domestic law rather than foreign law controlled the determination of earnings and profits, the Supreme Court sourced those profits to 1970 and 1971 rather than to 1968 and 1969 where the foreign taxes paid were larger in amount. See also *Champion International Corp. v. Commissioner,* 81 T.C. at 435.

We recognize that respondent's method is not without its imperfections, which Congress recognized when it adopted petitioner's aggregate approach in respect of post-1986 years. See *supra* note 4. But this legislative policy determination does not support the conclusion that we should, in effect, utilize that approach in applying the statutory provision and the decided cases in respect of pre-1986 years, particularly where Congress specifically provided that the 1986 provision was to have only prospective effect. Sec. 902(c)(6), added by the Tax Reform Act of 1986, Pub. L. 99-514, sec. 1202(a), 100 Stat. 2528; *Petroleum Corp. of Texas, Inc. v. United States, supra;* cf. *Hanover Bank v. Commissioner,* 369 U.S. 672, 685 (1962); *Gunther v. Commissioner,* 909 F.2d 291, 297 (7th Cir. 1990), affg. 92 T.C. 39 (1989).

In reaching our conclusion, we have taken into account the fact that the application of respondent's method can sometimes cause the permanent loss of credit for foreign taxes paid. But the fact that this condition can occur does not, in and of itself, justify the allowance of a credit not permitted by the statute. Cf. *Associated Telephone & Telegraph Co. v. United States, supra.* Similarly, the fulfillment of the legislative purposes of section 902, namely avoidance of double taxation and subsidiary branch equivalence is not a necessary prerequisite of every decision applying section 902. The validity of this statement is clearly reflected in *United States v. Goodyear Tire & Rubber Co.,* 493 U.S. at 143, wherein the Supreme Court recognized that definitional approaches cannot "uniformly and unqualifiedly" satisfy "the dual purposes underlying the indirect credit". See also *H.H. Robertson Co. v. Commissioner,* 59 T.C. at 73 n.9.

Our conclusion that respondent's method should be sustained renders it unnecessary for us to consider in detail the

alternative methods of sourcing suggested by petitioner. It is sufficient to observe that they simply represent ad hoc approaches designed to salvage something less than credit for 100 percent of the taxes SMIL paid over the years but more than the credit allowed by respondent, and seem to have some of the same infirmities as are present in petitioner's primary position.

In order to take into account concessions by the parties on other issues,

*Decision will be entered under Rule 155.*