**The STEEL IMPROVEMENT AND FORGE COMPANY, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 14800.**

United States Court of Appeals
Sixth Circuit.

March 5, 1963.

———◆———

Brooks W. Maccracken, Cleveland, Ohio (Robert W. Wheeler, Cleveland, Ohio, on the brief; M. B. & H. H. Johnson, Cleveland, Ohio, of counsel), for petitioner.

Gilbert E. Andrews, Dept. of Justice, Washington, D. C. (John B. Jones, Jr., Acting Asst. Atty. Gen., Lee A. Jackson, Harold C. Wilkenfield, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before MILLER and WEICK, Circuit Judges, and PECK, District Judge.

JOHN W. PECK, District Judge.

The record in this case presents a complicated factual pattern of financial negotiation culminating in a contract. However, that contract, from which the questions here at issue arose, is itself comparatively free from complexity. The petitioning Ohio corporation thereby contracted to sell its fully owned Canadian subsidiary (Canadian Steel Improvement Limited of Etobicoke, Ontario) to High Duty Alloys (Canada) Limited, which was a Canadian affiliate of Hawker Siddley Group Limited; these companies will be herein referred to as Canadian Steel, High Duty and Hawker Siddley.

For more than three years prior to the period in question, petitioner had owned Canadian Steel and through it operated a Crown owned forge plant at Etobicoke, making forgings primarily for Royal Canadian Air Force Engines. The negotiations above referred to occurred in March and April, 1954 and the contract actually arose from a letter of offer dated April 3, 1954 in which Hawker Siddley offered to buy all of the capital stock of Canadian Steel for the price of $570,000 (Canadian funds; all dollar amounts herein mentioned will be in Canadian funds unless otherwise indicated), subject to certain conditions. These conditions required petitioner to warrant that Canadian Steel had not and would not make commitments for any payments or distributions other than the repayment to petitioner of a $150,000 loan owing to it and a dividend not exceeding $180,000 (less Canadian Withholding Tax). A further condition provided that if such dividend were less than that amount, the purchase price would be increased by the difference between the dividend and $180,000, but not to exceed $64,000. The further conditions are not material to this decision. Petitioner accepted by its president's endorsement on the offering letter on April 6, 1954, and returned it with a letter of transmittal conditioning such acceptance on the obtaining of the Canadian Bank of Commerce's permission to the loan repayment and to the declaring of a dividend not to exceed $180,-000 prior to the closing date.

The Bank indicated such permission by letter dated April 6, 1954 and on April 15th an affirmative auditor's report, which was also a condition of finality, was received. On the same date that report was submitted to the Canadian Steel directors, and they authorized repayment of the $150,000 loan above mentioned and declared a dividend of $11.60 per share payable April 20th to the April 14th shareholders of record, less the Canadian Withholding Tax in respect thereof. At that meeting, one director's resignation was accepted and a Hawker Siddley nominee was elected director in his place; otherwise the composition of the board was not altered during the period in question. This dividend, in the amount of $116,000 less the 5% Canadian Withholding Tax in the amount of $5,800 was paid to petitioner on April 20, 1954, and it was that payment which gave rise to the present litigation. On the following day (April 21, 1954) petitioner delivered the certificates for all outstanding Canadian Steel Stock to High Duty and received its check in the amount of $634,000. Thereafter, petitioner had no further control of Canadian Steel, direct or indirect.

Petitioner filed its federal income tax return for the fiscal year ending September 30, 1954 at the Internal Revenue office at Cleveland, Ohio, and reported as income from dividends and long-term capital gains a total amount of $117,-735.95, American funds (arrived at by multiplying the rate of exchange (101.-4965052) times $116,000 Canadian dollars). The Commissioner of Internal Revenue determined the existence of a deficiency in the amount of $33,368.19 (American funds) on the theory that the entire amount of the dividend constituted ordinary income to the petitioner, and petitioner then sought a redetermination of that deficiency in the Tax Court of the United States. That court subsequently entered its affirmance and determined the existence of a deficiency in the amount assessed by the Commissioner.

The question initially here presented is whether the sum of $116,000 paid to petitioner by its wholly owned subsidiary was a dividend taxable to it as ordinary income, or whether it was in fact a part of the purchase price paid it for the subsidiary and therefore subject to tax as a capital gain. It is petitioner's contention that even though the payment was in the form of a dividend, it is necessary to look behind the surface of the transaction to determine its true character, and that such examination discloses that in substance the payment was actually a part of the purchase price. In support of this position, petitioner cites five

cases which it claims are here controlling. Those cases are Moore v. Commissioner, 124 F.2d 991 (C.C.A.7); DeGuire v. Higgins, 159 F.2d 921 (C.C.A.2) (these two cases are related, having grown out of the same transaction); Miller v. Commissioner, 247 F.2d 206 (C.A.7); Rupe Investment Corporation v. Commissioner, 266 F.2d 624 (C.A.5); and Frithiof T. Christensen, 33 T.C. 500 (1959). It is true that a sum paid in the form of dividends resulting in purchase price reductions by varying formulae was in each of these cases held not taxable as ordinary income, but subsequent to sale the stock was retained as security for the balance of the purchase price by the seller. Here, however, the petitioner retained full control and ownership of the subsidiary and caused distribution to be made to itself, and simply excluded the amount of the dividend from the purchase price. On the basis of this distinction the Tax Court, after a detailed review of these cases, found them to be without application, but we find ourselves unable to share that view. Rather, we incline to the position taken by the dissenting member of the Tax Court and conclude that the disputed dividend is properly taxable as ordinary income to the party having beneficial ownership of the stock at the time when the dividend is established, it being that party who bears the operating risks of the business and stands to benefit from profits or suffer detriment from losses.

This conclusion seems particularly appropriate under the facts of the present case, wherein it clearly appears from the record of the negotiations that the parties considered the $116,000 at issue to be part of the purchase price. In those negotiations petitioner said it must realize $900,000, purchaser made a direct payment to petitioner of $634,000 and, in effect, made arrangements for payment of a balance by checks for $150,000 and for $116,000. The fact that the latter was in the technical form of a dividend does not alter the fact that it constituted a portion of the $900,000 purchase price arrived at by negotiation. Thus, looking behind the technical form to determine the substance, we conclude that like the rest of the $784,000, the $116,000 was a part of the purchase price demanded and received by the petitioner, and is accordingly taxable as a capital gain rather than as ordinary income.

Respondent urges that his position is supported by Sam E. Wilson, Jr., 27 T.C. 976 (1957), affirmed per curiam 255 F.2d 702 (C.A. 5, 1958). However, far from being inconsistent with the result here reached, support thereof is found in the case cited. There it was held that payment to a party having a substantial interest in the continued success of the business venture because earnings up to the closing date enhanced his selling price was a dividend taxable as ordinary income. Conversely and consistently, it is here held that where the seller retained no such interest, the payment was not ordinary income in dividend form.

This conclusion makes inquiry into petitioner's alternate contention unnecessary, and in accordance with the foregoing the judgment is reversed and remanded.