**UNITED DYEWOOD CORPORATION v. BOWERS, Collector of Internal Revenue.**

District Court, S. D. New York.

Aug. 15, 1930.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Charles T. Cowenhoven, Jr., and H. Maurice Fridlund, both of New York City, of counsel), for plaintiff.

Charles H. Tuttle, of New York City (Leon E. Spencer, of New York City, of counsel), for defendant.

FRANK J. COLEMAN, District Judge.

For the year 1918 plaintiff was liable for an income and profits tax of $293,035.42 unless it was entitled to certain credits on account of taxes paid that year to Great Britain and France. Plaintiff filed a return claiming such credits in amounts more than counterbalancing the above sum, and the government partially disallowed some of them, arriving at the figure $72,358.49 as the amount due from plaintiff. This the plaintiff paid under protest, with interest, filed a claim for refund, which was refused, and now sues to recover it.

The question presented is, To what credits was the plaintiff entitled under sections 238 (a and b) and 240(c) of the Revenue Act of 1918 (40 Stat. 1057)? These sections read as follows:

"Sec. 238(a) That in the case of a domestic corporation the total taxes imposed for the taxable year by this title and by Title III shall be credited with the amount of any income, war-profits and excess-profits taxes paid during the taxable year to any foreign country, upon income derived from sources therein, or to any possession of the United States.

"If accrued taxes when paid differ from the amounts claimed as credits by the corporation, or if any tax paid is refunded in whole or in part, the corporation shall at once notify the Commissioner who shall redetermine the amount of the taxes due under this title and under Title III for the year or years affected, and the amount of taxes due upon such redetermination, if any, shall be paid by the corporation upon notice and demand by the collector, or the amount of taxes overpaid, if any, shall be credited or refunded to the corporation in accordance with the provisions of section 252. In the case of such a tax accrued but not paid, the Commissioner as a condition precedent to the allowance of this credit may require the corporation to give a bond with sureties satisfactory to and to be approved by him in such penal sum as he may require, conditioned for the payment by the taxpayer of any amount of taxes found due upon any such redetermination; and the bond herein prescribed shall contain such further conditions as the Commissioner may require.

"(b) This credit shall be allowed only if the taxpayer furnishes evidence satisfactory to the Commissioner showing the amount of income derived from sources within such foreign country or such possession of the United States, as the case may be, and all other information necessary for the computation of such credit."

Section 240(c) of the Revenue Act of 1918 provides:

"Sec. 240 * * * (c) For the purposes of section 238 a domestic corporation which owns a majority of the voting stock of a foreign corporation shall be deemed to have paid the same proportion of any income, war-profits and excess-profits taxes paid (but not including taxes accrued) by such foreign corporation during the taxable year to any foreign country or to any possession of the United States upon income derived from sources

without the United States, which the amount of any dividends (not deductible under section 234) received by such domestic corporation from such foreign corporation during the taxable year bears to the total taxable income of such foreign corporation upon or with respect to which such taxes were paid: Provided, That in no such case shall the amount of the credit for such taxes exceed the amount of such dividends (not deductible under section 234) received by such domestic corporation during the taxable year."

The general purpose of the statute was to credit to a domestic corporation upon its income taxes due to the United States such payments as the corporation had made to other countries for the same sort of taxes. It was intended that the benefit of the statute be extended not only to domestic corporations which made direct payments of taxes to other countries, but also to those that indirectly did so through tax payments made by subsidiaries. Furthermore, it must have been the general intention that the greater the payments, direct or indirect, to foreign governments, the greater would be the credits upon the United States tax.

The principal question presented is as to the method of determining the size of the credits on plaintiff's United States tax for payments made to Great Britain and France by its subsidiaries. The British subsidiary, of which plaintiff owned practically the entire outstanding stock, paid to Great Britain in 1918 two types of income or profits taxes: £15,216.12 assessed upon a taxable income of £50,722 which represented the average of its yearly income for the three years, 1915, 1916, and 1917; and an excess profits tax of £114,646.17.8 assessed upon a taxable income of £145,944 which represented the income for 1917. There is no dispute as to the amount of dividends the plaintiff received from this subsidiary during 1918 when the above taxes were paid to Great Britain, but the question is, To what sum should that amount be related in order to determine the proportion of the payments which plaintiff should have credited on its United States taxes pursuant to section 240(c) above.

The Treasury Department has computed the credit by lumping together the two different taxes paid by the subsidiary and also the two different incomes upon which those taxes were paid, and has related the amount of the dividends to those sums. Thus, the combined income and excess profits taxes were £129,863.9.8 and the combined incomes upon which those taxes were assessed was

£196,666; and the Treasury Department has allowed plaintiff as a credit the proportion of the combined taxes which the dividends bore to the combined income, about 23.37 per cent. or the concrete sum of £30,349.

The plaintiff contends that the credits should be figured separately as to the two taxes paid by the subsidiary; that it is entitled to a credit for the proportion of each tax that the dividends bore to the corresponding taxable income. This method results in a credit of £13,798.4.9 on account of the subsidiary's payment of the income tax and of £36,113.15.4 on account of the excess profits tax or of more than £19,000 in excess of the credit as figured by the Treasury Department.

Both methods lead to illogical results, but we must determine which one best serves the general purpose of the statute and at the same time does not conflict with specific words used. In the first place, it is incongruous to aggregate, as the Department has, the two different incomes upon which the two different taxes were assessed. In the case of the income tax, the taxable income was the average net income for the years 1915, 1916, and 1917, and, in the case of the excess profits tax, the taxable income was the net income for 1917. It is conceded that under the British law the net incomes for the two kinds of taxes were not determined by the same methods, and that the same deductions, etc., were not allowed in each instance; but, even aside from that, the adding of the average net income for the three years to the actual net income for the third year would give a rather incongruous sum to which to compare the dividends.

The result of the Department's method is certainly contrary to the general purpose of the statute, because an increase in the tax payments by the subsidiary leads to a decrease in the credits allowed to the plaintiff. If the subsidiary had paid only the excess profits tax, the plaintiff would have been entitled to a credit of £36,113.15.4 under the Department's method of computation; but since the subsidiary paid in addition an income tax of £15,216.12 the plaintiff is entitled to a total credit of only £30,349. That result is of course absurd, and it would take strong and definite language in the statute to support it.

The statute (section 240(c) provides that the credit to the domestic corporation shall be such proportion of "any income, war-profits and excess-profits taxes" paid by the subsidiary as the dividends received by the

domestic corporation shall bear to "the total taxable income [of the subsidiary] upon or with respect to which such taxes were paid." I am unable to see in this language anything that requires the Department to add together different taxable incomes with the absurd result above mentioned. The use of the word "total" is the only thing that in any way tends to indicate such intention; but this is offset by the fact that it relates to "taxable income * * * upon or with respect to which such taxes were paid," and no taxes were paid "upon or with respect to" the incongruous sum represented by the average income for 1915, 1916, and 1917 added to the income for 1917. That sum was in no sense a total income, but was in part a reduplication of the same income. The proper method in this instance is to compute the credits separately for the two kinds of tax payments made by the subsidiary.

■ As to the credits allowable to the plaintiff on account of the tax payments of a French subsidiary, it appears that in 1918 the latter paid an installment of 807,940 francs of a war profits tax levied upon an income of 6,112,590 francs received during the two years 1914 and 1915; and an installment of 1,536,100 francs of a war profits tax levied upon an income of 14,658,419.10 francs received during the year 1916. In computing the credit allowable to the plaintiff the Treasury Department aggregated the income for 1914–15 with the income for 1916 for the purpose of determining the total taxable income upon which the two tax payments were made, and the plaintiff approves that step. It is urged, however, that the total thus arrived at should be corrected in either of two ways before using it in comparison with the amount of the dividends in determining the proportion of the tax payments to be credited to plaintiff. The first contention is that, since only a fraction of the total taxable income was available for dividends because of the large tax on it, the amount of the dividends received by plaintiff should be compared with the fraction of the income available for dividends, instead of with the total; but the provisions of the statute are directly to the contrary, and there is no merit whatever in the point.

■ The plaintiff's second contention is that since the total war profits taxes on the two incomes (for 1914–15 and for 1916) were payable in installments over a period of years extending beyond 1918, it would be unfair to consider the installments paid in 1918 as having been paid on the total taxable incomes; in other words, that each installment was paid upon a proportionate part of the total taxable income. This is unsound and unsupported by anything in the statute.

■ The Treasury Department, however, made one mistake in reference to the credit for the French taxes. Instead of taking the amount of the dividends as received by the plaintiff, it reduced this by the amount of a French income tax paid by the plaintiff. The plaintiff is deemed to have received the entire dividend, even though the French government imposed a tax upon it. The amount of the dividend is considered only in determining the proportion of the payments by the subsidiary which should be credited to the plaintiff, and this should not be affected by the fact that plaintiff had to pay a tax on the dividend.

■ Finally, plaintiff claims a credit of $6,-674.94 because of an income tax paid in 1918 by the plaintiff itself to the British government upon a dividend received upon stock in a British corporation. Under section 238 (a and b) the plaintiff would be entitled to this credit, provided it proved to the satisfaction of the Treasury Department that the income upon which the tax was paid was derived from sources within Great Britain. There was, however, no such proof furnished to the Department, and the tax return did not claim the credit. Furthermore, the claim for refund made no mention of this item and advanced no basis for its allowance. Finally, the complaint does not mention it, and the first time it appears is in the stipulation of facts.

■ The plaintiff seems to rely upon the stipulation that an "adequate" claim for refund was filed to take this case out of the rule laid down by the courts that no recovery can be had unless the Treasury Department has first been given an opportunity to correct its error by a claim for refund. The word "adequate" in this connection should be construed with reference to the tax return, the claim for refund, and the complaint which do not mention this item. All the defendant intended in making the stipulation was to admit that the claim for refund was adequate as to such items as it contained.

Settle findings accordingly.