VULCAN MATERIALS COMPANY AND
SUBSIDIARIES, PETITIONER *v.* COMMISSIONER
OF INTERNAL REVENUE, RESPONDENT

Docket No. 11680-88.          Filed March 5, 1991.

*Dennis I. Meyer,* for the petitioner.
*Gary F. Walker,* for the respondent.

## OPINION

TANNENWALD, *Judge:* Respondent determined a deficiency in petitioner's 1984 Federal income tax in the amount of $133,679. The sole issue for decision is the amount of Saudi Arabian taxes that petitioner should be

---

[73]Sec. 11312 of the Revenue Reconciliation Act of 1990 (RRA-1990), Pub. L. 101-508, 104 Stat. 1388, 1388-454, amended sec. 6662, Imposition of Accuracy-Related Penalty, to apply to "substantial valuation misstatements under Ch. 1" arising from certain transfer price adjustments. This amendment, effective for taxable years ending after the effective date of the enactment of RRA-1990, has no effect on the instant case and, thus, is not considered here.

deemed to have paid under section 902[1] for the purpose of determining its foreign tax credit.

All of the facts have been stipulated, and the stipulation of facts and attached exhibits are incorporated herein by reference.

Petitioner is a domestic corporation with its principal corporate offices in Birmingham, Alabama, which, along with certain of its subsidiaries, filed a consolidated return for its 1984 taxable year. For all relevant years, petitioner kept its books and records and filed its Federal corporate income tax returns using the accrual method of accounting and on the basis of a calendar year.

Petitioner was a member of a Saudi Arabian partnership (Saudi partnership) which began operations in Saudi Arabia in 1976. The other original partners in the Saudi partnership included Trading & Development Co. (Tradco), a Saudi Arabian company; Shepherd Construction Co., Inc. (Shepherd); Fred Weber, Inc. (Weber); and Dalton Rock Products Co. (Dalton). Shepherd, Weber, and Dalton were U.S. corporations unrelated to Vulcan or Tradco by ownership through 1984. Tradco was wholly owned by a Saudi Arabian national at all times from 1976 through, and including, 1984. Weber withdrew from the partnership in 1977.

The Saudi partnership's operations consisted of the production of construction materials under a contract with the Arabian American Oil Co. (Aramco) and the operation of a Saudi Arabian quarry under a contract with Tradco. For the taxable year ending December 31, 1978, each partner's share in the Saudi partnership's income and tax attributable thereto was as follows:

| Partners | Ownership percentage |
| --- | --- |
| Vulcan | 48% |
| Dalton | 10 |
| Shepherd | 10 |
| Tradco | 32 |

Petitioner reported its share of the Saudi partnership's income on its 1978 Federal corporate income tax return, and pursuant to section 702(a)(6), claimed a section 901 direct

---

[1] All statutory references are to the Internal Revenue Code as amended and in effect for the year in issue. The provisions of sec. 902 have been substantially revised since 1984.

paid credit for the Saudi Arabian income tax attributable to its share of the Saudi partnership's income.[2]

In 1979, the business and assets of the Saudi partnership were transferred to Tradco-Vulcan Co., Ltd. (TVCL), a corporation organized and existing under the laws of Saudi Arabia, in exchange for shares in TVCL. The shares of TVCL were issued to the partners in the Saudi partnership in proportion to their partnership interests. TVCL's shareholders and their interests at the time of its initial organization and through the years in issue were as follows:

| Shareholder | Percentage interest |
|---|---|
| Vulcan | 48% |
| Shepherd | 10 |
| Dalton | 10 |
| Tradco | 32 |

At all relevant times since its formation, TVCL has continued to carry on the same lines of business as the partnership.

Saudi Arabia Royal Decree No. 17/2/28/3321 (1950), as amended, contains the income tax laws of Saudi Arabia. The Saudi Arabian income tax laws are not applicable to the income of Saudi Arabian nationals and Saudi Arabian corporations wholly owned by Saudi Arabian nationals. Rather, such Saudi Arabian nationals and corporations are required by Islamic law, the Shari'ah, to pay a tax called the Zakat. In the case of a Saudi Arabian corporation wholly owned by Saudi Arabian nationals, the Zakat was calculated in 1984 and for all relevant prior years as a flat-rate percentage of the net equity of the corporation less its net fixed assets; for 1984, the Zakat percentage was 1.25.

Saudi Arabian income tax laws impose an income tax on a "mixed corporation" (i.e., a Saudi Arabian corporation owned in part by Saudi Arabian nationals and in part by non-Saudi Arabian nationals) with respect to that portion of the corporation's net profits attributable to the ownership interest of non-Saudi Arabian shareholders. The portion of the net profits attributable to the non-Saudi Arabian

---

[2]The parties have also stipulated that this treatment was not challenged by respondent, an element which we consider irrelevant.

shareholders is determined by reference to the percentage ownership interests of the non-Saudi Arabian shareholders as reflected by their stock ownership. The requirements of the Shari'ah are satisfied by imposing the Zakat on the Saudi Arabian shareholders' interests in the net equity of the corporation less its net fixed assets. Dividends paid by Saudi Arabian corporations, whether to Saudi Arabian or non-Saudi Arabian shareholders, are not subject to any further Saudi Arabian tax.

TVCL has always maintained profit accounts and paid dividends from those accounts to its shareholders. TVCL allocated and distributed its profits to a particular shareholder as follows:

The pre-Saudi Arabian tax profits of such corporation are allocated to each shareholder, both Saudi Arabian and non-Saudi Arabian, on the basis of each shareholder's proportionate share interest in the corporation. Each shareholder's share of profits is then reduced by the Saudi Arabian tax. In the case of the Saudi Arabian shareholder, its share of the pre-corporate income tax profits is reduced by the Zakat tax paid on the basis of its shareholder interest. In the case of the non-Saudi Arabian shareholders, each such shareholder's share of pre-corporate income tax profits is reduced by its proportionate share of the Saudi Arabian corporate income tax paid on the basis of that non-Saudi Arabian shareholder's interest. As a result of the above calculation, there is a profit account for each shareholder. Each profit account is further reduced by the dividends paid to each shareholder.

The above profit accounts indicated an allocation to Tradco of 32 percent of the pre-tax profits of TVCL reduced by the Zakat and by previous distributions to Tradco, and an allocation to the three U.S. shareholders of their respective shares of TVCL's pre-tax profits (i.e., petitioner—48 percent, Shepherd—10 percent, and Dalton—10 percent) reduced by the Saudi Arabian income taxes and by previous distributions to such shareholders. All dividends through 1984 were in proportion to the balances in the shareholders' profit accounts at the end of the month preceding the declaration of the dividend.

In 1984, TVCL, which used the calendar year as its taxable year, paid dividends to petitioner aggregating 1,327,405 riyals, of which 557,924 riyals were paid in the first 60 days of 1984 and, under section 902(c)(1), were considered as paid out of the 1983 profits of TVCL, and

769,481 riyals were paid later in the year out of its 1984 profits. TVCL's pre-income-tax profits for 1983 and 1984, calculated pursuant to U.S. tax principles but stated in Saudi Arabian currency, were 20,902,753 and 10,436,790 riyals, respectively. TVCL credited 68 percent of such pretax amounts (i.e., 14,213,872 and 7,097,017 riyals, respectively) to the profit accounts of its U.S. shareholders in proportion to their ownership interests, and the balance thereof to the profit account of Tradco. TVCL's Saudi Arabian corporate income taxes for the 2 years were 6,883,191 and 4,267,909 riyals, respectively, all of which TVCL charged against the profit accounts of the U.S. shareholders in proportion to their relative share interests. The applicable conversion rates for Saudi Arabian income taxes paid for the 2 years were 3.46 and 3.53 riyals to the dollar, respectively.

On its 1984 Federal corporate income tax return, petitioner claimed a section 902 deemed paid credit for Saudi Arabian income taxes for each of the 2 years 1983 and 1984 by using a fraction, the numerator of which was the amount of the dividends paid to petitioner out of the profits of such year and the denominator of which was the portion of TVCL's pre-tax profits for the year that was allocated to the U.S. shareholders, reduced by TVCL's Saudi Arabian income taxes for each year, as follows (expressed in riyals):

*1983*

| | |
|---|---|
| Saudi tax .................................... | 6,883,191 |
| Dividend .................................... | 557,924 |
| Pre-tax profits allocated to U.S. shareholders...... | 14,213,872 |

Computation of allowable section 902 credit:

$$6,883,191 \ \times \ \frac{557,924}{14,213,872 - 6,883,191} \ = \ 523,866$$

*1984*

| | |
|---|---|
| Saudi tax .................................... | 4,267,909 |
| Dividend .................................... | 769,481 |
| Pre-tax profits allocated to U.S. shareholders...... | 7,097,017 |

Computation of allowable section 902 credit:

$$4,267,909 \ \times \ \frac{769,481}{7,097,017 - 4,267,909} \ = \ 1,160,816$$

In his notice of deficiency, respondent calculated petitioner's deemed paid credit for Saudi Arabian taxes paid by TVCL in the same manner as petitioner had on its 1984

return, except in one major aspect. In the denominators of the fractions, respondent included all of TVCL's pre-income-tax profits for the year, including amounts allocated by it to Tradco. Thus, respondent's calculations were as follows (expressed in riyals):

*1983*

| | |
|---|---|
| Saudi tax | 6,883,191 |
| Dividend | 557,924 |
| Pre-tax profits allocated to U.S. shareholders | 20,902,753 |

Computation of allowable section 902 credit:

$$6,883,191 \ \ \text{x} \ \ \frac{557,924}{20,902,753 \ - \ 6,883,191} \ = \ 273,924$$

*1984*

| | |
|---|---|
| Saudi tax | 4,267,909 |
| Dividend | 769,481 |
| Pre-tax profits allocated to U.S. shareholders | 10,436,790 |

Computation of allowable section 902 credit:

$$4,267,909 \ \ \text{x} \ \ \frac{769,481}{10,436,790 \ - \ 4,267,909} \ = \ 532,362$$

On its 1984 Federal corporate income tax return, petitioner claimed that $477,533 of the Saudi Arabian income taxes paid by TVCL with respect to its 1983 and 1984 profits was allowable as a deemed paid credit using the previously described calculation. On the other hand, respondent, using his own calculation, determined that $229,980 was the deemed paid credit allowable to petitioner and disallowed $247,553 in foreign tax credits claimed by petitioner. As a collateral adjustment, pursuant to section 78, respondent decreased petitioner's income by the same amount.

Section 902 provides:

SEC. 902(a). TREATMENT OF TAXES PAID BY FOREIGN CORPORATION.— For purposes of this subpart, a domestic corporation which owns at least 10 percent of the voting stock of a foreign corporation from which it receives dividends in any taxable year shall be deemed to have paid the same proportion of any income, war profits, or excess profits *taxes paid or deemed to be paid by such foreign corporation to any foreign country or to any possession of the United States, on or with respect to the accumulated profits of such foreign corporation from which such dividends were paid,* which the amount of such dividends (determined without regard to section 78) bears to the amount of such accumulated

profits in excess of such income, war profits, and excess profits taxes (other than those deemed paid).

\* \* \* \* \* \* \*

(c) APPLICABLE RULES.—

(1) ACCUMULATED PROFITS DEFINED.—For purposes of this section, the term "accumulated profits" means, with respect to any foreign corporation, *the amount of its gains, profits, or income computed without reduction by the amount of the income, war profits, and excess profits taxes imposed on or with respect to such profits or income by any foreign country or by any possession of the United States.* The Secretary shall have full power to determine from the accumulated profits of what year or years such dividends were paid, treating dividends paid in the first 60 days of any year as having been paid from the accumulated profits of the preceding year or years (unless to his satisfaction shown otherwise), and in other respects treating dividends as having been paid from the most recently accumulated gains, profits, or earnings.
[Emphasis added.]

Thus, petitioner's credit for the income taxes paid by TVCL is determined by application of the following formula:

$$\text{Foreign income taxes deemed paid} = \text{Foreign income taxes paid} \times \frac{\text{Dividends received by petitioner from TVCL}}{\text{Accumulated profits of TVCL minus foreign income taxes paid by TVCL}}$$

The parties are in agreement as to the amount of the foreign taxes paid and of the dividends received. Their dispute centers on the meaning of the term "accumulated profits." Petitioner contends that the proper figure is the amount of the profits of TVCL upon which the Saudi Arabian income tax was imposed, i.e., 68 percent of the total accumulated profits of TVCL, the portion of the profits allocable to all U.S. shareholders. Respondent contends that the proper figure is the total accumulated profits of TVCL. For the reasons hereinafter set forth, we agree with petitioner.

Initially, we need to dispose of the applicability of *United States v. Goodyear Tire & Rubber Co.,* 493 U.S. 132 (1989), in which the Supreme Court determined that "accumulated profits" were to be determined in accordance with U.S. rather than foreign tax rules. Applying that standard, the Supreme Court refused to permit the taxpayer to take into

account a loss of its British subsidiary attributable to deductions which were allowed under British tax law but would not have been allowed under U.S. law. Compare *Champion International Corp. v. Commissioner,* 81 T.C. 424, 447 (1983).

Respondent contends that *Goodyear* precludes us from taking into account the fact that under Saudi Arabian law the income taxes were imposed only on a portion of TVCL's accumulated profits. We think respondent misconceives the scope of *Goodyear.* There is no question that, under *Goodyear,* the determination of TVCL's accumulated profits turns upon the application of U.S. tax rules, and petitioner does not contend otherwise. The question before us is not how TVCL's accumulated profits are to be determined but whether, pursuant to section 902, all or only a pro rata portion of such profits so determined are to be included in the denominator of the formula.

The fact that the Supreme Court in *Goodyear* put its stamp of approval on the position of respondent set forth in I.T. 2676, XII-1 C.B. 48, 50 (1933), see 493 U.S. at ____, does not, as respondent argues, support his view of *Goodyear.* In that ruling, respondent stated:

It is important in establishing the amount of the accumulated profits that it be based as a fundamental principle upon all income of the foreign corporation available for distribution to its shareholders, whether such profits be taxable by a foreign country or not. [I.T. 2676, XII-1 C.B. at 50.]

It is clear, however, that respondent's ruling was directed at the methodology for calculating "income" for purposes of the deemed foreign tax credit and, in fact, the Supreme Court itself described respondent's statement precisely that way. *United States v. Goodyear Tire & Rubber Co.,* 493 U.S. at ____ .

Turning to the question before us, we start out by examining the applicable statutory provisions because, if they are unambiguous, we are not permitted, except in rare and unusual situations, to depart from the statutory language. See *Cal-Maine Foods, Inc. v. Commissioner,* 93 T.C. 181, 208-209 (1989). See also *Demarest v. Manspeaker,* 498 U.S. __ (1991). Respondent contends that the language of section 902 mandates that the total accumulated profits

of TVCL be used. We are not convinced such is the case. The phraseology of section 902(a) and (c)(1), which we have italicized, see *supra* pp. 415-416, relates the taxes paid to "the accumulated profits of such foreign corporation from which such dividends were paid" (sec. 902(a)) and specifies that "accumulated profits" should be *determined without reduction by the taxes* "imposed on or with respect to such profits" (sec. 902(c)(1)). Similarly, we are not persuaded that the terminology of section 1.902-1(e)(1), Income Tax Regs., requires us to conclude that the statutory provisions are as all-encompassing as respondent maintains. That terminology states that, in determining the accumulated profits of a foreign corporation, there shall be included "The earnings and profits of such corporation for such year." The use of the word "The" is not necessarily equivalent of "the entire" or "all." We recognize that respondent has ruled in accordance with the position he takes herein. Rev. Rul. 87-14, 1987-1 C.B. 181. However, the ruling is devoid of any analysis; it simply announces its conclusion and cites the pertinent statutory provisions and regulations. Moreover, we note that the position taken in this ruling is inconsistent with the approach respondent adopted in explaining the methodology to be used in calculating the foreign tax credit under the United States-United Kingdom Income Tax Convention, December 31, 1975, 31 U.S.T. (Part 6) 5668, T.I.A.S. 9682, 1980-1 C.B. 394. See *infra* p. 420. Granted that the interpretation of a treaty is not equivalent to the interpretation of a statutory provision, we think that there is sufficient commonality involved to cause us not to give particular weight to respondent's ruling, which clearly is not binding upon us. *Stubbs, Overbeck & Associates, Inc. v. United States,* 445 F.2d 1142, 1146-1147 (5th Cir. 1971).

In short, we think that the statutory and regulatory provisions are sufficiently unclear to permit us to examine the objectives of the foreign tax credit. See *Fehlhaber v. Commissioner,* 94 T.C. 863, 865-866 (1990). Those objectives, so recently articulated in *United States v. Goodyear Tire & Rubber Co., supra,* have, since the inception of the foreign tax credit in 1918, been avoiding double taxation and affording a U.S. corporation operating through a

foreign subsidiary the same credits as if it were conducting a branch operation in the foreign country. See 493 U.S. at __ - __ . In terms of those objectives, we are satisfied that petitioner should prevail.

There can be no question that if TVCL had been conducted as a branch, only petitioner's share of the profits would have been taken into account, and that it would have received a direct credit for the foreign taxes paid, and respondent does not contend otherwise. Similarly, if accumulated profits are not limited to the profits which were the subject of the Saudi Arabian income tax and in which petitioner shared, petitioner will not be entitled to the full credit for the Saudi Arabian taxes imposed on its share of those profits and, to that extent, double taxation will result. Indeed, the logical result of respondent's position is that if the share of TVCL's profits allocable to U.S. shareholders were not subject to any Saudi Arabian income tax but only the share allocated to the Saudi Arabian shareholders were the base for imposing such tax, the U.S. shareholders would be entitled to a foreign tax credit under section 902 even though they suffered no economic burden from such income tax. Such a result would be bizarre to say the least, as respondent himself has recognized in setting forth examples of situations which he claims would be abusive by permitting the U.S. tax burden to be manipulated through the establishment of separate shareholder accounts for accumulated profits, and the foreign income taxes attributable thereto, simply to suit the U.S. shareholders' purpose. But the situation here is not simply the result of the establishment of separate accounts by the parties in interest; it is founded on the stipulated structure of the Saudi Arabian tax law.

Respondent also seeks to counteract petitioner's position by an analysis which aggregates the Saudi Arabian income tax and the Zakat tax (which is a noncreditable type of tax) and then allocating the resulting tax burden among TVCL's shareholders, in order to sustain his claim that petitioner is not really exposed to a double tax burden under respondent's approach. This analysis mixes apples and pears. In *United Dyewood Corp. v. Bowers,* 44 F.2d 399 (S.D. N.Y. 1930), affd. per curiam 56 F.2d 603 (2d Cir. 1932), a British

subsidiary of the taxpayer was subject to British income tax on the average of 3 years of taxable income and to an excess profits tax on the current year's taxable income. Respondent maintained that both amounts of taxable income and both amounts of British taxes should be aggregated for the purpose of computing the taxpayer's deemed foreign tax credit. That position was rejected, and respondent was required separately to compute the credits for each of the taxes.

The sourcing of accumulated profits has been utilized in various other contexts. Thus, Rev. Rul. 69-440, 1969-2 C.B. 46, uses the sourcing method of earnings and profits to allocate distributions among various classes of stock in order to determine what portion should constitute dividends under section 316 in respect of each class. The determination of "dividends" under section 316 is applicable to a comparable determination under section 902(a), see sec. 1.902-1(a)(6), Income Tax Regs., and has been applied to source accumulated profits to the appropriate taxable year for the purpose of calculating the foreign tax credit. See *Champion International Corp. v. Commissioner,* 81 T.C. at 431-432. Additionally, in providing the U.S. Senate with an explanation of the operation of the deemed foreign tax credit in respect of United Kingdom taxes, respondent utilized the separate proportionate interest approach utilized by petitioner herein. See Technical Explanation of the United States-United Kingdom Income Tax Convention, 1980-1 C.B. 455, 472-476. See also *Xerox Corp. v. United States,* 14 Cl. Ct. 455 (1988). Respondent is, of course, correct that this explanation was not an interpretation of section 902 as such but was presented in the specific context of a negotiated agreement. Admittedly, the foregoing examples of sourcing are distinguishable, but we believe they provide useful analogies in resolving the issue before us. In this connection, we note that, while the economic burden of the foreign income tax is irrelevant for determining who is liable for such tax, see, e.g., *Biddle v. Commissioner,* 302 U.S. 573 (1938), it is an important element in determining how that liability should be apportioned under section 902 among the parties in interest.

The long and short of the matter is that "no definitional approach to 'accumulated profits' uniformly and unqualifiedly satisfies the dual purposes underlying the indirect credit." See *United States v. Goodyear Tire & Rubber Co.,* 493 U.S. at ____ . Such being the case, the question before us is which interpretation of that term as discussed by the parties herein "is more faithful to congressional intent." 493 U.S. at ____ . Our view is that petitioner's interpretation of the phrase "accumulated profits," rather than that of respondent, best carries out that intent. We so hold.

*Decision will be entered for the petitioner.*